IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DON WAYNE SIMON, § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. 3:05-CV-1388-N |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**I. BACKGROUND**

**A. NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

**B. PARTIES**

Petitioner Don Wayne Simon, TDCJ-ID #1070579, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently housed at the Coffield Unit in Tennessee Colony, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

Don Wayne Simon (referred to herein as Don Wayne) was charged by indictment in cause no. F00-53067-KH in the Criminal District Court Number One of Dallas County, Texas, with aggravated robbery. (Clerk's R. at 2.) The indictment also included an enhancement paragraph alleging a prior felony conviction for robbery. (Id.) Don Wayne's brother, Gary Simon (referred to herein as Gary), was also charged in connection with the offense, and their joint jury trial commenced on October 15, 2001.

At trial, Robert Rowe, a retired police officer, testified that he worked as a security guard and investigator and was licensed to carry a handgun. (Reporter's R., vol. 2, at 9-10.) In the early morning hours of August 31, 2000, he stopped at the Burger King at the corner of Live Oak and Carroll Streets in Dallas to get something to eat. (*Id.* at 10-11.) He saw two stray cats, got out of his van to feed them, and spoke briefly with a homeless man sitting nearby in the grass. (*Id.* at 10-13.) As he bent over to feed and pet the cats, a black male approached him, hit him on the shoulder and head with a pistol, and demanded money. (*Id.* at 15.) He stood up and drew his gun. Both men fired shots before the shooter and a second black male fled. (*Id.* at 17-19, 24, 64.) Rowe suffered a bullet wound to his leg. (*Id.* at 21, 34.) Although he picked two suspects out of a photographic line-up several days later, he could not accurately identify the homeless man or the assailants then or at the time of trial. (*Id.* at 24, 79-80, 89.)

Michael Boone, the homeless man at the scene of the crime, was incarcerated on a theft charge at the time of trial and admittedly had a lengthy criminal history. (*Id.* at 84-86.) He testified that on the night in question he saw two black men run toward Rowe, one ran behind Rowe's van, and the other pulled a gun on Rowe. (*Id.* at 91, 133-34, 147.) He immediately fled in the opposite

2

direction and heard shots. (*Id.* at 91-93, 135.) He returned to the scene when he thought it was safe and gave law enforcement officers descriptions of the two men; later, at the hospital, he identified Gary as the man who pulled the gun on Rowe. (*Id.* at 95-97, 136.) He also identified Gary in open court as the shooter. (*Id.* at 99.) He could not identify Don Wayne in a photographic line-up or in open court as the other man involved in the offense. (*Id.* at 97.)

Elder Broadnax, a friend of the Simon brothers, testified that on the night of August 30, 2000, the three of them were driving around, drinking, and smoking marihuana from 11:00 p.m. until around 1:30 a.m. in the morning. (*Id.* at 161-65.) Don Wayne was driving, Gary was in the passenger seat, and he was in the backseat. (*Id.* at 165.) At some point, the car stopped on a side street off Live Oak, and Don Wayne and Gary got out of the car. He stayed in the car, dozing in the back seat. (*Id.* 165-66; Reporter's R., vol. 4, at 140.) Shortly thereafter, he heard gunshots and ducked down in the seat. (Reporter's R., vol. 2, at 169.) Don Wayne and Gary came running back to the car, and he saw that Gary's shoulder was bleeding. (*Id.* at 169-70.) Instead of going to a hospital, Don Wayne drove to Gary's girlfriend's house and an ambulance was called. (*Id.* 170-72.) Don Wayne instructed him to tell the police they were carjacked. (*Id.* at 173-74.) After questioning, however, he told the officers what had really transpired and gave a written statement regarding the events. (Reporter's R., vol. 4, at 22, 27.) Forensic evidence showed that Gary's blood was found near a pay phone in the area of the shooting. (Reporter's R., vol. 5, at 111.)

Counsel for Don Wayne called Trina Cobb, Don Wayne's girlfriend, who testified that Don Wayne was with her at her apartment on the night in question. (*Id.* at 150-51.) According to Cobb, Don Wayne arrived around 11:30 or 12:00 that night, and left after receiving an emergency page from his brother Gary around 2:30 in the morning. (*Id.* at 151-53.) Counsel for Gary called Shanaie

3

Lomax, Gary's girlfriend. Lomax testified that around 3:00 or 4:00 a.m. on August 31, 2000, Broadnax opened the door to her apartment and yelled that Gary had been shot and to call an ambulance. (Reporter's R., vol. 6, at 15-19, 37.) Broadnax did not have a shirt on and put on one of Gary's. (*Id.* at 18, 37-38.) She called 911, and the police and an ambulance arrived. (*Id.*) Broadnax told her Gary had been shot during an attempted carjacking. (*Id.* at 41.) After the ambulance left for the hospital, Don Wayne arrived, and she, Broadnax and Don Wayne rode to the hospital in her car. (*Id.* at 20-22.) Don Wayne kept asking what had happened, and Broadnax told Don Wayne that Gary was shot during an attempted carjacking. (*Id.* at 22-24.) Gary then testified that he and Broadnax hung out at a car wash on the night in question and then went to Judy's Club after midnight. (*Id.* at 72.) The two were confronted by a group of men in the parking lot and shots were fired at them. (*Id.* at 72-75.) After he realized he had been shot, he and Broadnax drove to Lomax's apartment. He asked Broadnax for his t-shirt to stem the bleeding until the ambulance arrived. (*Id.* at 77-78.) He denied committing the robbery or knowing the whereabouts of his brother Don Wayne at the time of the offense. (*Id.* at 88-93.)

On October 19, 2001, at the conclusion of the guilt/innocence phase of the trial, the jury found both Don Wayne and Gary guilty of aggravated robbery as charged in the indictment. (Clerk's R. at 34.) On October 22, 2001, following the punishment phase, the trial court entered a deadly weapon finding, found the enhancement allegation true, and assessed Don Wayne's punishment at forty years' imprisonment. (*Id* at 35.) Don Wayne appealed his conviction, but the Fifth District Court of Appeals affirmed the trial court's judgment on October 14, 2003. *Simon v. Texas*, No. 05-01-01767-CR, slip op. (Tex. App.–Dallas Oct. 14, 2003) (not designated for publication). He did not seek further direct review. (Petition at 3.) He filed a post-conviction state

4

habeas application, raising the claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. *Ex parte Simon*, State Habeas Application No. 56,016-01, at cover. He filed this federal petition for writ of habeas corpus on June 8, 2005. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing). Quarterman has filed an answer with supporting documentary exhibits, to which Don Wayne has filed a reply.

**D. ISSUES**

In two grounds, Don Wayne claims that (1) he was denied effective assistance of trial counsel by counsel's failure to seek a severance of his trial from his brother's and (2) there is no evidence to support his conviction. (Petition at 7.)

**E. RULE 5 STATEMENT**

Although Quarterman does not address the issue, it appears Don Wayne sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b)(1) with regard to his first claim. His second claim, however, is unexhausted and procedurally barred from federal habeas review. (Resp't Answer at 2.)

## II. PROCEDURAL BAR

Don Wayne claims there was no evidence to support his conviction. Quarterman asserts that because Don Wayne raised the claim for the first time in his state writ application, the claim is procedurally defaulted. (Resp't Answer at 10-12.)

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other*

5

*grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence"). A review of the claims Don Wayne raised in state court reveals that he did not fairly raise a legally insufficiency of the evidence claim to the Texas Court of Criminal Appeals in a procedurally proper manner. He did not raise such claim on direct appeal. The failure to challenge the legal sufficiency of the evidence on direct appeal constitutes "a procedural default under state law" that may bar this Court from reviewing the claim on federal habeas review. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *Cross v. Johnson*, 169 F. Supp. 2d 603, 614-15 (N.D. Tex. 2001).

Don Wayne did not cure the procedural default by presenting his legal sufficiency claim to the Texas Court of Criminal Appeals in his state application for writ of habeas corpus. Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996) (recognizing the long-standing legal principle under Texas law). Moreover, when the Texas Court of Criminal Appeals denied Don Wayne's state application for writ of habeas corpus on the findings of the trial court without written order, it implicitly denied the sufficiency claim on the procedural basis that such claim is not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

By not presenting a legal insufficiency of the evidence claim on direct appeal, Don Wayne procedurally defaulted the claim under Texas law. Such default constitutes an adequate and independent state procedural ground to bar federal habeas review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801- 07 (1991). Because Don Wayne can no longer present such claim to the Texas Court of

Criminal Appeals in a petition for discretionary review, the Court may find the claim procedurally barred. *See Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (citing TEX. R. APP. P. 68.2 and dealing with a petition for discretionary review that would be untimely), *vacated on other grounds*, 541 U.S. 386 (2004). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, which showing has not been made, Don Wayne's legal insufficiency of the evidence claim is procedurally barred. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000). The Court will not further consider it.

### III. APPLICABLE LAW

This habeas corpus proceeding is controlled by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

7

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as the court did here, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Don Wayne claims he received ineffective assistance of trial counsel based on counsel's failure to move to sever his trial from the trial of his brother in light of the fact that there was no evidence or eyewitness testimony linking him to the offense. (Petition at 7; Pet'r Memorandum at 1-4.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 684-88 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. *Id*. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 687.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claim

8

has been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001).

After conducting a hearing by affidavit, the state habeas judge, who was also the state trial judge, made specific findings on Don Wayne's claim, based largely on counsel's affidavit, and concluded that Don Wayne had failed to prove ineffective assistance under the requirements of *Strickland*. (State Habeas R. at 58-65, 82.) Counsel averred in his affidavit that–

> [Don Wayne] has always denied the charge for which he was sentenced to 40 years by the Court. He stated that Elder Broadnax participated in the Robbery and was implicating him to exculpate himself from actually being a participant with his brother, Gary Simon. [Don Wayne] did not want me to sever his cause from the trial of his brother because he related to me that his brother would testify that he was not present during the Robbery. . . . In hindsight I should have ignored [Don Wayne's] request to have his brother's trial held with his and perhaps there would have been a different outcome. (*Id.* at 63.)

The habeas court found that counsel was a trustworthy individual, that the statements made by counsel in his affidavit were worthy of belief, and that counsel's statements were true, correct and dispositive of the claim. (*Id.* at 59.) Weighing the credibility of the affiants was the role of the state court, and, clearly, the court found the affidavit of counsel to be credible. *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts). In turn, the Texas Court of Criminal Appeals denied habeas relief on the basis of the habeas court's findings.

9

Don Wayne presents no compelling argument or evidence to rebut the state courts' adjudication of his claim, and there is nothing in the record to suggest that, but for trial counsel's alleged omission, the jury would have acquitted him. Review of counsel's performance must be highly deferential and take into account counsel's perspective at the time. *See Strickland*, 466 U.S. at 689. In this case, the decision not to move for a severance can only be considered trial strategy. Having independently reviewed Don Wayne's claim in conjunction with the state court records and counsel's affidavit, counsel's decision was motivated by a plausible trial strategy. Thus, the state courts' determination was reasonable under the *Strickland* standard.

## V.  RECOMMENDATION

Don Wayne's petition for writ of habeas corpus should be DENIED.

SIGNED on this 10th day of January, 2008.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE